## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PATRICIA CAHILL** ) | |
| **97 Royce Road** ) | |
| **Marlborough, MA 01752** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 15-1447** |
| ) | |
| **ROBERT A. MCDONALD,** ) | |
| **Secretary of the U.S. Department of** ) | |
| **Veterans Affairs** ) | |
| **810 Vermont Avenue, NW** ) | |
| **Washington, DC 20420** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## COMPLAINT

### I.     NATURE OF THE CLAIM

1.     Plaintiff Patricia Cahill ("Plaintiff" or "Ms. Cahill") brings this complaint of employment discrimination against Defendant Secretary of the United States Department of Veterans Affairs ("Defendant," "Agency," or "VA").

2.     The acts complained of violate Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*

3.     Plaintiff seeks (1) declaratory, (2) injunctive relief, and (3) make-whole relief based on the discriminatory conduct that she has been subjected to by Defendant; and (4) reasonable attorney's fees and other legal costs.

## II.     JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*; Section 505 of the Rehabilitation

Act of 1973, as amended, 29 U.S.C. § 794a; and 28 U.S.C. § 1331.

5.      Jurisdiction is proper because Plaintiff has exhausted all available administrative

remedies.

6.      Venue lies in this Court pursuant to 28 U.S.C. § 1391 because the Defendant

Agency resides in the District of Columbia.

## III.     PARTIES

7.      Ms. Cahill is a female citizen of the United States who resides in Marlborough,

Massachusetts.  At all times relevant to this action through the present, Plaintiff has been

employed by the Agency as a Registered Nurse (RN).

8.      The VA is an Executive agency of the United States Government located in the

District of Columbia.

9.      Defendant Robert A. McDonald is the present Secretary of the VA, with authority

over the hiring, firing, assignment, terms, and conditions of employment of persons employed by

the Agency, including but not limited to the Plaintiff.  Defendant is named solely in his official

capacity as head of the Agency as required by Title VII of the Civil Rights Act of 1964, as

amended, §7, 42 U.S.C. § 2000e, *et. seq*.

## IV.     ADMINISTRATIVE PREREQUISITES

10.     Ms. Cahill has complied with all of the administrative prerequisites necessary to

bring this action.

11.     On May 1, 2014, Ms. Cahill made a timely request for EEO Counseling with the VA Office of Resolution Management.

12.     On August 13, 2014, Ms. Cahill timely filed a formal complaint of discrimination with the Agency.

13.     The Agency has not issued a Final Agency Decision or taken a final action in response to Ms. Cahill's formal complaint of discrimination.

14.     Ms. Cahill has not filed an appeal of a Final Agency Decision or final action by the Agency addressing her formal complaint of discrimination.

15.     This Complaint is filed more than 180 days after Ms. Cahill filed her formal complaint of discrimination with the Agency.

16.     Ms. Cahill is therefore entitled to file this Complaint before this Court.  *See* 42 U.S.C. § 2000e-16(c), and 29 C.F.R. § 1614.407(a).

## V.     FACTS CENTRAL TO PLAINTIFF'S CLAIMS

17.     Ms. Cahill is a Caucasian female born on August 8, 1958.  She is a licensed Registered Nurse (RN) and holds a Bachelor of Science in Nursing (BSN).

18.     Ms. Cahill is a qualified individual with multiple documented disabilities, both mental and physical.

19.     With respect to mental disabilities, Ms. Cahill suffers from cognitive deficits due to two traumatic brain injuries suffered in or around January 2012 and December 2014, and has had a diagnosis of Attention Deficit Hyperactivity Disorder (ADHD) since then.  She was further diagnosed with work-related acute post-traumatic stress disorder (PTSD) in November 2013. This combination of mental conditions substantially limits Ms. Cahill's ability to work in noisy, stressful environments.

20.     With respect to physical disabilities, Ms. Cahill has been diagnosed with several impairments including hallux rigidus in her right foot, a condition which impairs her ability to walk or stand for long periods of time without pain; a right torn rotator cuff also from a work-related injury to her right shoulder sustained in December 2014, which substantially limits her ability to lift objects and safely drive a car without pain; hyperacusis due to trauma and laceration of her left ear, and a fractured left sinus bone and broken jaw bone, which in combination substantially limit and interfere with her ability to hear, cause her to be hypersensitive to loud environments, cause nerve pain when placing objects such as a telephone to her ear, and cause over-stimulation of her olfactory system making her hypersensitive to pollutants in the environment.

21.     Ms. Cahill began her employment with the Agency as a RN in 1994.  Over the course of her 21 year career with the VA, she has worked in the Kidney Transplantation Unit; Intensive Care Unit (ICU); Surgical Intensive Care Unit (SICU); Post-Anesthesia Care Unit (PACU); in the Medical Care Cost Fund office (MCCF) as a Revenue Utilization Review Nurse; in the Home Telehealth Department as Care Coordinator and as a Tele-Care Triage RN; and in the Patient Call Centers in the VA Boston Healthcare System (VABHS) Campuses in Brockton and Jamaica Plain, Massachusetts as a Triage RN.

22.     After working in the Patient Call Center in the VABHS Jamaica Plain Campus beginning April 2012 for approximately four months, Ms. Cahill requested a transfer as a reasonable accommodation of her disability due to the noisy, stressful environment.  As an accommodation, the Agency's Reasonable Accommodation Committee (RAC) placed Ms. Cahill on a six-month detail to the Home Telehealth Department at the VABHS Brockton Campus

beginning August 27, 2012, in hopes that a permanent position would become available for Ms. Cahill there.

23.     Although a permanent position in the Home Telehealth Department was not made available to Ms. Cahill within six months of her beginning the detail, she was permitted to continue working in Home Telehealth after her six-month detail expired.

24.     As of November 2013, Ms. Cahill's detail to the Home Telehealth Department as a reasonable accommodation of her disability had continued successfully for approximately 15 months, without a permanent position being made available to her.

25.     Throughout her nursing career until she initiated contact with an Agency EEO Counselor on May 1, 2014 to file a discrimination complaint, Ms. Cahill had received only positive performance ratings (Achieved High Satisfactory levels), along with cash awards and step increases.

### *Sexual Harassment and November 19, 2013 Assault by Co-Worker J.S.*

26.     Beginning on or about May 2013, Ms. Cahill met and had periodic interactions with another individual at the VA Brockton Campus, hereafter referred to by his initials "J.S.," who, upon information and belief, was employed at that time by the Agency as a clinical video technician (CVT).  J.S. is a large, loud, and physically imposing male military veteran.

27.     When J.S. saw Ms. Cahill, he routinely made offensive, inappropriate, crude, and intimidating remarks to Ms. Cahill, including comments about her physical appearance and physical attractiveness (e.g., "you look good for your age, just too nice to work here"), lewd and unwelcome sexual remarks, and comments about her earning too much money from her job at the VA.

28.     J.S. habitually spoke in Ms. Cahill's presence about firearms, weapons, his substantial collection of firearms, and his military service.  J.S. frequently displayed images of firearms and other weapons on his computer monitors at work where Ms. Cahill could see them, which Ms. Cahill found intimidating and disturbing, and even appeared to order weapons on the internet at work.  Ms. Cahill reported and complained about J.S.'s inappropriate and intimidating conduct to her supervisor, Ms. Eileen Tarsky.  To Ms. Cahill's knowledge, no corrective action was taken.  J.S.'s offensive conduct continued unabated.

29.     Beginning on November 18, 2013, Ms. Cahill's workstation was relocated to a small, remote office in the basement of Building 2 on the Brockton Campus, away from Building 3 where the Home Telehealth Department was based.  Ms. Cahill was required to share this office with J.S.

30.     As soon as Ms. Cahill arrived to the shared office on November 18, 2013, J.S. began making sexually offensive, threatening and intimidating remarks to Ms. Cahill.

31.     On November 19, 2013, while Ms. Cahill was attempting to speak to a patient on the telephone, J.S. entered the office and began talking very loudly.  Ms. Cahill asked J.S. to lower his voice because she was having difficulty hearing her patient.  In response, J.S. approached Ms. Cahill and began screaming insults and threats at her, saying, e.g., "Get your grown ass upstairs;" "You're not going to come in here and tell us what to do! You're a guest here"; "I told Eileen [Tarsky] you need your own office!"  J.S. then rushed out of the office, making physical contact with Ms. Cahill as he passed and slamming the door.  Upon his return to the office within minutes, J.S., still angry and agitated, made a loud phone call to an unknown third party in which he discussed his ownership of guns and made an offer, stating: "I'll come up and show you the pistol I was talking about."

32.     Fearing for her safety, Ms. Cahill immediately reported J.S.'s threatening conduct to her supervisor, Ms. Tarsky.  Out of fear for her safety, Ms. Cahill also took leave from work the following day November 20, 2013.

33.     While at home on November 20, 2013, Ms. Cahill called and reported the incident with J.S. to the Agency's Human Resources Specialist James Tavares.  Ms. Cahill told Mr. Tavares that she feared for her safety.  Mr. Tavares told Ms. Cahill that the matter would be referred to the VA police for thorough investigation and that she and J.S. would be physically separated.  As a result, Ms. Cahill returned to work on Thursday, November 21, 2013

34.     To Ms. Cahill's knowledge, no police referral was ever made and the Agency never conducted an appropriate investigation regarding J.S.'s actions, as neither she nor her witnesses were ever contacted for an interview. Ms. Cahill also later contacted the VA police for a copy of a report of investigation of this incident and was told that none existed.

35.     Between November 21, 2013 and November 26, 2013, the Agency took ineffective measures to physically separate Ms. Cahill and J.S. as she had requested and been promised.

36.     On November 21, 2013, J.S. was instructed to remain in neighboring Building 3, while Ms. Cahill was instructed to continue working in the basement office of Building 2.  The following day, J.S. was given permission to return to Ms. Cahill's building to use a color printer located in the basement office that she was occupying.  Then, Ms. Cahill was relocated to an office in Building 3, on the same floor in close proximity to J.S.'s clinical workspace.

37.     As a result, during the period November 21, 2013 through November 26, 2013, Ms. Cahill and J.S. were instructed to remain in different buildings for only a single 8-hour workday.  Ms. Cahill continued to encounter J.S. on a daily basis, and she remained in constant

fear for her safety at work until she took a medical leave of absence beginning on November 26, 2013.

38.     During the period November 21, 2013 through November 26, 2013, whenever Ms. Cahill saw J.S., he continued to make lewd and threatening comments to her, such as, "I'll show you who's boss," and to make threatening gestures toward her.

39.      J.S.'s aggressive and threatening conduct took a toll on Ms. Cahill's health. She began experiencing nightmares, flashbacks, and anxiety due to J.S., and sought treatment from her medical providers. She received a diagnosis of post-traumatic stress disorder (PTSD).

***November 2013 - December 2014 Failure to Provide Reasonable Accommodation***

40.     On November 25, 2013, Ms. Cahill initiated contact with the Agency's EEO Program Manager to report that she had not been physically separated from J.S. as promised.

41.     On November 25, 2013, Ms. Cahill underwent an Employee Health examination by a VA physician for anxiety and elevated blood pressure and was referred to her primary care physician, who, on November 26, 2013 declared Ms. Cahill unfit for duty due to the harassment by J.S., and specified as a workplace restriction that Complainant could not be exposed to her hostile coworker, J.S. As a result, Ms. Cahill was placed on medical leave per her doctor's orders, effective November 26, 2013.

42.     On numerous occasions between December 9, 2013 and August 21, 2014, Ms. Cahill communicated via e-mail and telephone with both Mr. Tavares and Ms. Tarsky to explain, *inter alia*, that she had been diagnosed with PTSD as a result of her interactions with J.S.; that she continued to feel terrified of him and unsafe working where she would encounter him; and, that the measures taken to separate her from J.S. had been insufficient and ineffective. Ms. Cahill requested a reasonable accommodation of her disability and to return to work in an

environment in which she could feel safe and not encounter J.S., to include being reassigned to another VABHS campus in the Boston area or being granted telework privileges.

43.     On numerous occasions between December 9, 2013 and August 21, 2014, Ms. Cahill submitted to Ms. Tarsky and Mr. Tavares medical documentation supporting her requests for reasonable accommodation, including medical records, physician's notes, and physician responses to Agency "Requests for Medical Documentation Addendum," documenting her diagnosis of PTSD and confirming that she could work if effectively physically separated from J.S., to include requests for telework and/or reassignment.

44.     At no point between December 9, 2013 and August 21, 2014 did the Agency initiate or engage in an interactive process with Ms. Cahill to determine whether the Agency could provide a reasonable accommodation of her documented PTSD, which would permit Ms. Cahill to return to work in a manner consistent with her doctors' orders.

45.     On December 13, 2013, Ms. Cahill requested 312 hours of advance sick leave because she had exhausted her available leave.

46.     On or about December 17, 2013, the Agency advised Ms. Cahill that her then 15-month detail to Home Telehealth would not be extended, but did not offer Ms. Cahill a replacement job position.

47.     By letter dated January 10, 2014, the Agency denied Ms. Cahill's request for advance sick leave, without explanation.  As a result, Ms. Cahill was forced to request Leave Without Pay (LWOP) to cover her absence from work.

48.     In a letter dated February 6, 2014, addressed to Ms. Cahill and copying Ms. Tarsky, Mr. Tavares stated: "You and your co-worker have been physically separated in that he

no longer shares your office space and is on another floor. Since your restriction is that you be physically separated from your co-worker, you are free to report to duty…"

49.     Ms. Cahill attempted unsuccessful to reach Mr. Tavares by telephone and e-mailed multiple times in order to challenge the accuracy of the February 6, 2014 letter, but he failed to respond to her phone calls or e-mails.

50.     In February and March 2014, Ms. Cahill applied for two vacant RN Tele-health positions in the Agency's Bedford, MA campus, where she would have no contact with J.S.'s workplace, but was not selected.

51.     On May 1, 2014, Ms. Cahill initiated contact with an Agency EEO Counselor to complain about the Agency's handling of her harassment and assault complaints against J.S., the Agency's failure to effectively separate her from J.S., and the Agency's failure to provide her with a reasonable accommodation that would enable Ms. Cahill to work since November 26, 2013.

52.     On August 13, 2014, having received no resolution to her informal complaint, Ms. Cahill filed a formal Complaint of Discrimination with the Agency, naming her supervisor Ms. Tarsky and Mr. Tavares, the Agency's Local Reasonable Accommodation Coordinator (LRAC), as Responsible Management Officials (RMOs).

53.     On August 19, 2014, Ms. Cahill was offered a permanent position in the Home Telehealth department at the VA Brockton Campus under Ms. Tarsky's supervision.  Because Ms. Cahill could no longer afford to be out of work and without income on LWOP status, she accepted the position and returned to work on August 25, 2014, contrary to her doctors' advice and her lingering fear of encountering J.S. at work.

54.     From November 26, 2013 until August 25, 2014, Ms. Cahill was constructively suspended when she was forced to exhaust her available sick leave, and subsequently forced in a LWOP status due to the agency's failure to provide a reasonable accommodation of her disability and its failure to provide a safe workplace free from harassment by her co-worker J.S.

55.     From August 25, 2014 until the Agency finally transferred Ms. Cahill to the Patient Call Center at the VA Jamaica Plain Campus under a new supervisor on January 22, 2015, the Agency failed to provide any requested accommodation of her disability.

***August 2014 Retaliatory Harassment Upon Return to Home Tele-health Department***

56.     Upon Ms. Cahill's return to work at the VA Brockton Campus on August 25, 2014 after filing her formal discrimination complaint, Ms. Tarsky began subjecting Ms. Cahill to retaliation for her protected EEO activity, creating a hostile work environment.

57.     Prior to Plaintiff's protected EEO activity, Ms. Tarsky and Ms. Cahill enjoyed a positive working relationship.  Ms. Tarksy had routinely praised Plaintiff's work performance and work product, gave her positive evaluations, and wrote glowing recommendation letters for Plaintiff.

58.     During the period August 25, 2014 through September 19, 2014, Ms. Tarsky harassed Ms. Cahill by reprimanding her loudly in front of other staff; insulting, humiliating, and belittling her; blaming Ms. Cahill for problems that could not reasonably have been seen as Ms. Cahill's fault; denying Ms. Cahill access to trainings and new technology used by other Home Telehealth nurses; restricting Ms. Cahill's ability to take sick leave; and singling Ms. Cahill out for closer scrutiny than other nurses who had not engaged in protected EEO activity.

59.     From August 25, 2014 through September 19, 2014, Ms. Cahill's work schedule and assigned duty location was made to be less predictable than the work schedules and assigned

duty locations of other nurses employed in Home Telehealth.  Ms. Tarsky began changing Ms.

Cahill's work locations, requiring her to bounce back and forth between the VA Brockton and

Jamaica Plain Campuses.  This caused Ms. Cahill to be stressed and fatigued, and interfered with

her ability to maintain a normal work schedule and perform her job consistently.

60.    Ms. Tarsky's retaliatory harassment of Ms. Cahill caused Ms. Cahill so much

stress and anxiety that Ms. Cahill's mental health provider placed her on medical leave

beginning September 19, 2014.

61.    When Ms. Cahill returned to work on or about October 1, 2014, she remained

under the supervision of Ms. Tarsky, but was transferred to the Patient Call Center at the VA

Jamaica Plain Campus and finally free from the VA Brockton Campus where J.S. worked.

62.    Upon Ms. Cahill's return to work in October 2014, she continued to be harassed

by Ms. Tarsky, and the retaliatory hostile work environment continued unabated.

63.    On December 12, 2014, Ms. Cahill reported to work despite suffering from an

upper respiratory infection because Ms. Tarsky had placed Ms. Cahill on leave restriction upon

her return to work beginning October 2014, and refused to permit her to take sick leave without a

prior doctor's note.  While at work, Ms. Cahill began experiencing difficulty breathing and fell,

injuring her knees, right shoulder, abdomen and face.  She was taken to Urgent Care by her

husband, and ordered by her doctor to stay home for two days.

64.    On December 15, 2014, Ms. Cahill suffered another serious fall in her home

garage, fracturing her sinus bone and jaw, and sustaining a serious laceration to her left ear

requiring surgical repair.

65.    From December 15 – 19, 2014 and December 22 – January 22, 2015, Ms. Tarsky

charged Ms. Cahill with Absence Without Official Leave (AWOL), despite her request for sick

leave and doctor's notes verifying her surgery and need for medical leave while she recovered from her injuries.

66.     On February 13, 2015, the Agency issued Ms. Cahill a Notice of Proposed Suspension for fourteen (14) calendar days for being AWOL, Failure to Safeguard Confidential Matter, and Conduct Unbecoming a VA Employee.

67.     On July 30, 2015, the Agency sustained a Suspension of Ms. Cahill for seven (7) calendar days, sustaining its charges of Failure to Safeguard Confidential Matter and Conduct Unbecoming a VA Employee, but rescinding its charge of AWOL.

*__January 2015-August 2015 Delays in Providing Reasonable Accommodation__*

68.     On December 18, 2014, Ms. Cahill sent an e-mail to HR Specialist Joseph Reis asking if she could be moved from Home Telehealth (HT) to the Patient Call Center, stating that "I am not welcome in HT and should not have to put up with the daily bullying/harassment, etc."

69.     On January 6, 2015, Mr. Reis contacted Ms. Cahill via e-mail to notify her that it would be possible for her to transfer from Home Telehealth to the Patient Call Center.

70.     On January 22, 2015, Ms. Cahill reported for work at the Patient Call Center, after being medically cleared by her doctors and the Agency's Occupational Health doctor, and resumed her duties as a RN.

71.     While pleased to be free from the retaliatory harassment that she suffered under Ms. Tarksy's supervision, Ms. Cahill found it difficult to work at the Patient Call Center due to her same cognitive disabilities (ADHD and traumatic brain injury) that prevented her from working there in 2012, which were compounded by her diagnosis of PTSD following the November 2013 assault by J.S. and her head injuries from the December 15, 2014 fall, making it painful to use a Call Center headset.

72.     On February 19, 2015, Ms. Cahill's doctors placed her on medical leave due to Ms. Cahill's inability to work in the Patient Call Center due to the environmental stressors there.

73.     On or about March 5, 2015, Ms. Cahill submitted a written request for full-time telework privileges as a reasonable accommodation to the Agency's Reasonable Accommodation Committee with supporting medical documentation from her doctors.

74.     On or about June 26, 2015, Ms. Cahill submitted a renewed request for telework as a reasonable accommodation, with supporting medical documentation from her doctors.

75.     On July 31, 2015, the Agency's Reasonable Accommodations Committee issued its decision granting Ms. Cahill full time telework privileges as a RN at the Patient Call Center, under a new supervisor.

76.     From March 5, 2015 and continuing until July 31, 2015, the Agency failed to provide Ms. Cahill reasonable accommodations for her disabilities, to include telework, accessible office equipment and other accommodations necessitated by her medical conditions, which would pose no undue burden to the Agency.

## VI.     CLAIMS FOR RELIEF

### COUNT I: SEXUAL HARASSMENT
### (TITLE VII)

77.     Plaintiff adopts and incorporates by reference paragraphs 1-75 above.

78.     Defendant unlawfully discriminated against Plaintiff on the basis of her sex (female).

79.     Title VII makes it unlawful for an employee to be subjected to harassment on the basis of sex.

80.     Plaintiff was subjected to unwelcome, sexually offensive conduct and assault by her male co-worker Johnnie Stewart, which was based upon and directed at Plaintiff by reason of

14

her gender, to include lewd remarks about her physical appearance, inappropriate comments about female sexuality, sexual propositions, and threatening remarks and conduct related to his firearm collection and enthusiasm for weapons, which were intimidating and placed Plaintiff in fear for her safety.

81.    Plaintiff notified her supervisor of the sexual harassment and assault, but the Agency failed to take appropriate corrective action, and instead assigned Plaintiff to share an isolated office with J.S.; failed to initiate an appropriate investigation into J.S.'s conduct; and required Ms. Cahill to report to work at workstations that were in close proximity and easily accessible by J.S., despite being informed that J.S.'s lewd and threatening conduct and unwelcomed encounters with Plaintiff continued.

82.    The sexual harassment and assault was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's work performance, so as to create an intimidating, hostile, and offensive working environment, and cause Plaintiff injuries and substantial harm.

83.    The Agency's inaction and failure to discipline J.S. or thoroughly investigate Ms. Cahill's allegations of sexual harassment and assault amounted to condoning the harassing behavior by J.S. and dismissing Ms. Cahill's allegations, and created a hostile work environment for Plaintiff.

84.    Plaintiff was forced to take an extended unpaid medical absence from work in a leave without pay status, rather than continue to work in an unsafe, hostile work environment.

85.    As a direct and proximate result of the sexual harassment and assault that created a hostile work environment, Plaintiff suffered severe stress, fear, anxiety, mental anguish, damage to her reputation, loss of earnings, emotional and physical harm, and irreparable damage to her well-being and her family's well-being.

## COUNT II: FAILURE TO PROVIDE REASONABLE ACCOMMODATION
## (SECTION 501 OF REHABILITATION ACT)

86.     Plaintiff adopts and incorporates by reference paragraphs 1-75 above.

87.     As a result of the sexual harassment and assault by J.S., Plaintiff was diagnosed with post-traumatic stress disorder (PTSD).

88.     PTSD is a qualified disability under the Rehabilitation Act of 1973, as amended, and the Americans with Disabilities Act, as amended.

89.     Plaintiff gave Defendant prompt notice of her diagnosis of PTSD.

90.     Plaintiff gave Defendant prompt notice that as a result of her disability, she required a safe working environment with total physical separation from J.S.

91.     After Plaintiff notified Defendant that she had been diagnosed with PTSD, the Agency failed to initiate or engage Plaintiff in an interactive process to determine what, if any, reasonable accommodation would permit Plaintiff to perform the essential functions of her job.

92.     Defendant implemented inconsistent and ineffective measures to physically separate Plaintiff from J.S., and, as a result, J.S. remained in close physical proximity and retained physical access to Plaintiff's workspace and continued to subject her to lewd and threatening comments and conduct at work, even after the Agency's measures had been implemented.

93.     Defendant failed to appropriately respond to multiple communications from Plaintiff that its measures implemented to physically separate her from J.S. were not effective and did not accommodate her disability such that she could return safely to work.

94.     Defendant ignored or denied every request made by Plaintiff from on or about December 13, 2013 through on or about August 21, 2014 for a reasonable accommodation of her

PTSD, including requests for full-time telework privileges, or lateral transfers to other VA

campuses.

95.     The Agency would have suffered no undue burden in providing a reasonable

accommodation to Plaintiff, which would have effectively physically separated her from J.S.

96.     Because the Agency failed to provide Plaintiff with a reasonable accommodation

of her disability from on or about November 26, 2013 through on or about August 21, 2014,

Plaintiff spent eight (8) months out of work on leave without pay status.

97.     As a proximate cause of the Agency's failure to provide a reasonable

accommodation, Ms. Cahill suffered severe stress, fear, anxiety, mental anguish, damage to her

reputation, loss of earnings, emotional and physical harm, and irreparable harm to her well-being

and the well-being of her family.

## COUNT III: RETALIATORY HOSTILE WORK ENVIRONMENT
## (TITLE VII)

98.     Plaintiff adopts and incorporates by reference paragraphs 1-75 above.

99.     The Agency's Human Resources (HR) Specialist and Local Reasonable

Accommodation Coordinator (LRAC) James Tavares was aware that as early as November 25,

2013, Ms. Cahill had complained to the Agency's EEO Program Manager regarding the

Agency's failure to reasonably accommodate her need to be separated from, and have no

physical contact at work with, J.S. due to her fear for her safety and diagnosis of PTSD.

100.    Afterwards, Mr. Tavares began ignoring and failing to respond to Ms. Cahill,

including her communications reporting that the initial measures taken to separate her from J.S.

had been insufficient and ineffective; her request made on or before January 13, 2014 to telework

from home; and her request for reassignment to RN positions on other Agency campuses in the

Boston area.

17

101.    Mr. Tavares' failure to acknowledge or respond to Ms. Cahill's requests for accommodation, failure to engage her in an interactive process to determine appropriate accommodations, and failure to grant her a reasonable accommodation, requiring her to choose between either returning to an unsafe work environment or remaining out of work on leave without pay status, was in retaliation for her protected EEO activity and created a hostile work environment.

102.    Prior to initiating EEO activity in May 2014 and filing a Formal Complaint of Discrimination in August 2014 against her supervisor Ms. Tarsky, Plaintiff enjoyed a positive working relationship with Ms. Tarsky.

103.    Prior to Plaintiff's protected EEO activity, Ms. Tarsky routinely praised Plaintiff's work performance and work product, gave her positive evaluations, and wrote glowing recommendation letters for Plaintiff.

104.    Ms. Tarsky was aware of Plaintiff's discrimination complaint filed against her as the Responsible Management Official.

105.    When Plaintiff returned to work within days of filing her formal discrimination complaint, Ms. Tarsky subjected Ms. Cahill to retaliation for her protected EEO activity, creating a hostile work environment, including by reprimanding her loudly in front of other staff; insulting, humiliating, and belittling her; blaming Ms. Cahill for problems that could not reasonably have been seen as Ms. Cahill's fault; denying Ms. Cahill access to trainings and new technology used by other Home Tele-health nurses; restricting Ms. Cahill's ability to use leave; singling Ms. Cahill out for closer scrutiny than other nurses who had not engaged in protected EEO activity; giving Ms. Cahill an erratic and disruptive work schedule; and charging Ms. Cahill

with AWOL on days when Ms. Cahill had requested medical leave with supporting documentation from her doctors.

106.    Ms. Tarsky's retaliatory and hostile treatment of Ms. Cahill upon her return to work on August 25, 2014 caused Ms. Cahill so much anguish, anxiety, stress, fear, humiliation, and emotional and physical injury that Ms. Cahill's medical providers again placed her on medical leave again, beginning September 19, 2014.

107.    When Plaintiff was released by her medical providers and returned to work on or about October 2014, Ms. Tarsky's retaliation and hostile treatment against Ms. Cahill continued until Ms. Cahill was transferred to the Patient Call Center in the VA Jamaica Plain campus on January 22, 2015.

108.    As a proximate cause of Mr. Tavares' and Ms. Tarsky's retaliatory treatment of Plaintiff, which created a hostile work environment, Plaintiff suffered severe stress, fear, anxiety, mental anguish, damage to her reputation, loss of earnings, loss of career opportunities, emotional and physical harm, and irreparable damage to her well-being and the well-being of her family.

## V.    PRAYERS FOR RELIEF

WHEREFORE, Ms. Cahill respectfully requests that the Court issue judgment granting her the following relief from Defendant:

a.  A declaratory judgment that Defendant has discriminated against Plaintiff as alleged herein, in violation of Title VII of the Civil Rights Act and Section 501 of the Rehabilitation Act of 1973, as amended;

b.  An injunctive order requiring Defendant to take specific corrective action, including restoring Plaintiff's sick and annual leave expended during her absences caused by

Defendant's discrimination, correcting negative performance evaluations given to Ms.

Cahill following August 2014, and taking appropriate steps to protect Plaintiff from

further acts of discrimination in the future;

c.   Monetary and/or compensatory damages to the maximum extent allowed by law;

d.   Reasonable attorney's fees and the costs and expenses of bringing this action against

the Agency;

e.   Such other relief that is just and proper, including any pre- and post-judgment interest

due; and

f.   All other relief to which Ms. Cahill is entitled to at law or in equity.

## VII.   JURY DEMAND

Plaintiff requests a trial before a jury.

Dated: September 4, 2015                        Respectfully submitted,

_/s/ Tamara L. Miller_
TAMARA L. MILLER (DC BAR NO. 435156)
MILLERMASCIOLA, ATTORNEYS AT LAW
1825 K Street, NW, Suite 1150
Washington, DC 20006
Tel: (202) 223-8181
Fax: (202) 318-0559
Tamara.miller@millermasciola.com

*Counsel for Plaintiff Patricia Cahill*